## STATE OF WEST VIRGINIA
## SUPREME COURT OF APPEALS

*In re* **A.S., B.V., and A.V.**

**No. 19-0036** (Ohio County 18-CJA-36, 18-CJA-37, and 18-CJA-38)

**FILED**

**June 12, 2019**

EDYTHE NASH GAISER, CLERK
SUPREME COURT OF APPEALS
OF WEST VIRGINIA

## MEMORANDUM DECISION

Petitioner Mother J.O., by counsel John M. Jurco, appeals the Circuit Court of Ohio County's October 22, 2018, order terminating her parental rights to A.S., B.V., and A.V.[1] The West Virginia Department of Health and Human Resources ("DHHR"), by counsel Mindy M. Parsley, filed a response in support of the circuit court's order. The guardian ad litem, Joseph J. Moses, filed a response on behalf of the children in support of the circuit court's order and a supplemental appendix. On appeal, petitioner argues that the circuit court erred in terminating her parental rights without imposing a less-restrictive dispositional alternative.

This Court has considered the parties' briefs and the record on appeal. The facts and legal arguments are adequately presented, and the decisional process would not be significantly aided by oral argument. Upon consideration of the standard of review, the briefs, and the record presented, the Court finds no substantial question of law and no prejudicial error. For these reasons, a memorandum decision affirming the circuit court's order is appropriate under Rule 21 of the Rules of Appellate Procedure.

In April of 2018, the DHHR filed an abuse and neglect petition that alleged the DHHR received multiple referrals concerning petitioner's drug use, her failure to properly supervise the children, and issues of domestic violence in the home. More specifically, one referral alleged that petitioner stabbed her boyfriend and "was waving a gun around, screaming that she was going to kill everyone" while the children were present. The referrals also raised concerns about the conditions in the home, including a lack of utilities. Shortly before the petition's filing, the DHHR received a final referral indicating that, following a domestic altercation in the home, petitioner was shot with a hunting rifle. Petitioner's boyfriend was arrested following the incident, and petitioner was transferred to Ruby Memorial Hospital to undergo treatment for "serious injuries"

---

[1]Consistent with our long-standing practice in cases with sensitive facts, we use initials where necessary to protect the identities of those involved in this case. *See In re K.H.*, 235 W. Va. 254, 773 S.E.2d 20 (2015); *Melinda H. v. William R. II*, 230 W. Va. 731, 742 S.E.2d 419 (2013); *State v. Brandon B.*, 218 W. Va. 324, 624 S.E.2d 761 (2005); *State v. Edward Charles L.*, 183 W. Va. 641, 398 S.E.2d 123 (1990).

1

to her arm. According to petitioner, the shooting was accidental and there were no issues of domestic violence in the home. DHHR employees, however, spoke with the children, who confirmed witnessing domestic violence between petitioner and her boyfriend in the home. The children also indicated that they were physically abused. As to substance abuse, petitioner admitted to abusing Adderall, while the children reportedly saw a "dope pipe" in petitioner's purse. The children also reported having "been unable to wake [petitioner] up to feed them," which caused the children to "go hungry or try to fix something themselves." The DHHR also confirmed that petitioner's boyfriend's brother died from an overdose on the porch of their home at a time he was supposed to be caring for the children. Following a preliminary hearing, the circuit court found that removal of the children from the home was appropriate given the imminent danger to their welfare.

At an adjudicatory hearing in June of 2018, petitioner stipulated to abusing the children by virtue of her "issues with mental health" and drug addiction. The circuit court further found that petitioner had not submitted to drug screening and "would need to do that for visits [with the children] to be set up." Additionally, petitioner sought a post-adjudicatory improvement period, but no ruling was made in regard to that request during the hearing.

In July of 2018, the parties appeared for a status hearing following a multidisciplinary team ("MDT") meeting to discuss the possibility of petitioner obtaining an improvement period. According to the circuit court's findings, during the MDT petitioner "denied almost everything, stating the kids are lying." Accordingly, the DHHR indicated that it would not agree to an improvement period for petitioner because of her failure to acknowledge the issues that needed to be addressed. The circuit court further found that, despite the various issues related to their relationship, petitioner and her boyfriend "intend[ed] to remain together."

In August of 2018, the parties appeared for a hearing on petitioner's motion for an improvement period. According to the record, petitioner reported to a treatment facility, Northwood, the day prior to the hearing "for mental health issues." The DHHR "objected to any postponement of the . . . hearing" because it alleged that petitioner "knew this hearing was set before" she decided to report to Northwood. Ultimately, the circuit court denied petitioner's motion for a post-adjudicatory improvement period.

In October of 2018, the circuit court held a dispositional hearing. According to petitioner's counsel, petitioner had no contact with him since August of 2018. The circuit court denied counsel's request for "more time to prepare for the hearing." Following the presentation of evidence, the circuit court found that petitioner attended only one MDT meeting during the case and "denied 'everything'" during that meeting. Further, the circuit court found that petitioner "failed to cooperate with [the] DHHR[] and failed to fully acknowledge the abuse and neglect of the children." The circuit court also made findings concerning petitioner's history of substance abuse, as established by her own admission and extensive testimony from multiple witnesses. Further, evidence established that petitioner's substance abuse contributed to the domestic violence in the home, including an incident in which petitioner stabbed her boyfriend in front of the children while she "appeared impaired." The circuit court further found that petitioner "engage[d] in behavior that presents a danger to the children, especially given [her] drug abuse issues." In addition to the incident in which petitioner was shot, this also included the fact that

"[t]here were loaded and unsecured weapons in the home." Further, the circuit court recounted evidence concerning petitioner's failure to maintain an appropriate home for the children, given that it lacked "heat, electric and water" at various points and was "in a deplorable condition." Testimony established that, "rather than paying . . . bills or buying food for the children," petitioner "us[ed her] money on drugs." Additionally, because of her refusal to submit to drug screening, maintain contact with the DHHR, and cooperate, generally, petitioner had "not seen the children since their removal by the DHHR."

The circuit court went on to find that petitioner "demonstrated an inadequate capacity to solve the problems of abuse and neglect on [her] own or with help." Despite assistance from the DHHR, the circuit court found that petitioner could not remedy the issues "relating to domestic violence, abuse of the children, exposure of the children to dangerous situations and dangerous people, and neglect of the children, when she does not acknowledge these problems." Further, the circuit court found that petitioner was addicted to controlled substances such that it seriously impacted her parenting skills. Although she sought treatment, the circuit court noted that petitioner "failed to pursue after care treatment that was recommended." Due to petitioner's failure to follow through with the case plan, the circuit court found that there was no reasonable likelihood she could substantially correct the conditions of abuse and neglect. The circuit court also found that termination of petitioner's parental rights was in the children's best interests. Ultimately, the circuit court terminated petitioner's parental rights. It is from the dispositional order that petitioner appeals.[2]

The Court has previously established the following standard of review:

"Although conclusions of law reached by a circuit court are subject to *de novo* review, when an action, such as an abuse and neglect case, is tried upon the facts without a jury, the circuit court shall make a determination based upon the evidence and shall make findings of fact and conclusions of law as to whether such child is abused or neglected. These findings shall not be set aside by a reviewing court unless clearly erroneous. A finding is clearly erroneous when, although there is evidence to support the finding, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed. However, a reviewing court may not overturn a finding simply because it would have decided the case differently, and it must affirm a finding if the circuit court's account of the evidence is plausible in light of the record viewed in its entirety." Syl. Pt. 1, *In Interest of Tiffany Marie S.*, 196 W.Va. 223, 470 S.E.2d 177 (1996).

Syl. Pt. 1, *In re Cecil T.*, 228 W. Va. 89, 717 S.E.2d 873 (2011). Upon review, the Court finds no error in the proceedings below.

On appeal, petitioner alleges that the circuit court erred in terminating her parental rights instead of imposing a less-restrictive dispositional alternative. In support of this assignment of

---

[2]The children's fathers' parental rights have either been terminated or voluntarily relinquished. According to the DHHR, the permanency plan for the children is adoption by the maternal grandparents.

error, petitioner highlights several factors that she believes mitigate against termination of her parental rights, including the following: (1) the fact she was not adjudicated upon issues of domestic violence; (2) conflicting evidence in regard to several of the domestic violence incidents; (3) her admissions at disposition relating to substance abuse and other issues; (4) the complications from her gunshot wound that hampered her compliance; (5) improvement in her treatment through Northwood resulting in a "guarded" prognosis; (6) the possibility that the DHHR's permanency plan could have provided for disposition under West Virginia Code § 49-4-604(b)(5); and (7) the fact that she did not refuse to testify pursuant to the Fifth Amendment. According to petitioner, these facts support a finding that there was a reasonable likelihood she could substantially correct the conditions of abuse and neglect in the near future. Petitioner's arguments, however, are not compelling and ignore the overwhelming evidence that supported the disposition imposed below.

While petitioner cites her "admissions" in the case, she fails to acknowledge that the admissions in question were made at the dispositional hearing. By that time, petitioner had failed to participate in services to remedy the conditions of abuse and neglect. Specifically, petitioner attended only one MDT meeting earlier in the proceedings, during which she accused the children of lying about the extensive abuse and neglect they suffered in her home and ultimately denied "everything" alleged in the petition. This MDT meeting occurred after petitioner stipulated to certain allegations at adjudication. As such, it is clear that petitioner never meaningfully acknowledged the issues of abuse and neglect in this case. As this Court has held,

> [i]n order to remedy the abuse and/or neglect problem, the problem must first be acknowledged. Failure to acknowledge the existence of the problem, i.e., the truth of the basic allegation pertaining to the alleged abuse and neglect or the perpetrator of said abuse and neglect, results in making the problem untreatable and in making an improvement period an exercise in futility at the child's expense.

*In re Timber M.*, 231 W. Va. 44, 55, 743 S.E.2d 352, 363 (2013) (quoting *In re: Charity H.*, 215 W. Va. 208, 217, 599 S.E.2d 631, 640 (2004)). Accordingly, it is clear that petitioner was incapable of remedying the conditions of abuse and neglect in this matter because of her refusal to acknowledge them.

While petitioner argues that the circuit court erred in relying on the issues of domestic violence in the home in deciding which dispositional alternative to impose, the findings above demonstrate that there was ample evidence absent the domestic violence issues to support termination. As outlined above, with the exception of treatment which she did not complete, petitioner took no steps to address any of the issues in the home, including her substance abuse and mental health issues. Further, while it is true that petitioner was not adjudicated on the basis of domestic violence, it is clear that this issue was inextricably related to her substance abuse. The record shows that during the altercation in which petitioner stabbed her boyfriend in the children's presence, she appeared to be under the influence of drugs. Accordingly, it is clear that petitioner's issues with domestic violence were directly related to her drug addiction. As such, we find no error in the circuit court's consideration of evidence regarding the ongoing domestic violence in the home in reaching its dispositional decision.

4

We also note that, in reaching its final decision, the circuit court found that petitioner had not seen her children since their removal because of her failure to submit to drug screening. "We have previously pointed out that the level of interest demonstrated by a parent in visiting his or her children while they are out of the parent's custody is a significant factor in determining the parent's potential to improve sufficiently and achieve minimum standards to parent the child." *In re Katie S.*, 198 W. Va. 79, 90, n.14, 479 S.E.2d 589, 600 n.14 (1996) (citing *Tiffany Marie S.*, 196 W. Va. at 228 and 237, 470 S.E.2d at 182 and 191; *State ex rel. Amy M. v. Kaufman*, 196 W. Va. 251, 259, 470 S.E.2d 205, 213 (1996)). Again, this evidence overwhelmingly supports the circuit court's finding that petitioner was unable to correct the conditions of abuse and neglect.

Pursuant to West Virginia Code § 49-4-604(c)(3), a situation in which there is no reasonable likelihood the conditions of abuse and neglect can be substantially corrected includes one in which

> [t]he abusing parent . . . [has] not responded to or followed through with a reasonable family case plan or other rehabilitative efforts of social, medical, mental health or other rehabilitative agencies designed to reduce or prevent the abuse or neglect of the child, as evidenced by the continuation or insubstantial diminution of conditions which threatened the health, welfare or life of the child.

Additionally, under West Virginia Code § 49-4-604(c)(1), a situation in which there is no reasonable likelihood the conditions of abuse and neglect can be substantially corrected includes one in which

> [t]he abusing parent . . . [has] habitually abused or [is] addicted to alcohol, controlled substances or drugs, to the extent that proper parenting skills have been seriously impaired and the person or persons have not responded to or followed through the recommended and appropriate treatment which could have improved the capacity for adequate parental functioning.

With these parameters in mind, it is clear that the record supports the circuit court's finding that there was no reasonable likelihood petitioner could substantially correct the conditions of neglect, given her noncompliance during the proceedings, as more fully set forth above. While it is true that petitioner underwent some treatment in this matter, the circuit court specifically found that petitioner failed to follow through with the aftercare recommended during that treatment. As such, it is clear that petitioner was both addicted to drugs such that her proper parenting skills were seriously impaired and she failed to follow through with the reasonable family case plan.

West Virginia Code § 49-4-604(b)(6) permits a circuit court to terminate parental rights upon findings that "there is no reasonable likelihood that the conditions of neglect or abuse can be substantially corrected in the near future" and that termination is necessary for the welfare of the child. The circuit court made both findings in this matter upon substantial evidence. Further, we have held as follows:

> "Termination of parental rights, the most drastic remedy under the statutory provision covering the disposition of neglected children, [West Virginia Code § 49-

5

4-604] may be employed without the use of intervening less restrictive alternatives when it is found that there is no reasonable likelihood under [West Virginia Code § 49-4-604(c)] that conditions of neglect or abuse can be substantially corrected." Syllabus point 2, *In re R.J.M.*, 164 W.Va. 496, 266 S.E.2d 114 (1980).

Syl. Pt. 5, *In re Kristin Y.*, 227 W. Va. 558, 712 S.E.2d 55 (2011). Given that petitioner failed to comply with services below, it is clear that she was not entitled to a less-restrictive dispositional alternative.

For the foregoing reasons, we find no error in the decision of the circuit court, and its October 22, 2018, order is hereby affirmed.

Affirmed.

**ISSUED**:  June 12, 2019

**CONCURRED IN BY**:

Chief Justice Elizabeth D. Walker
Justice Margaret L. Workman
Justice Tim Armstead
Justice Evan H. Jenkins
Justice John A. Hutchison